## The North American Fire Insurance Company v. Mowatt.

A long and intricate litigation had been pending in two different suits in this court, for several years, in one of which N. sought to enforce a large mortgage upon lands which M. claimed by a prior right, and G. and S., two other mortgagees, also asserted rights, in part adverse to both.   N.'s suit had abated, and in the other suit M. had a favorable report from a master of the court.   Thereupon M. and N. agreed that N. should buy in the claims of G. and S. at a discount; and M. was to receive a fund in court in the other suit.   N. was to proceed and foreclose his large mortgage as well as those thus purchased, and sell all the lands mortgaged.   Out of the proceeds of sale and prior rents, N. was to retain his advances to G. and S. with interest, and all but $2000 of the sum taken out of court by M. with five per cent. interest.   The residue was to be equally divided between M. and N.

N. immediately bought the mortgages of G. and S., but neglected to proceed to foreclose and sell, for four years, by which a loss ensued to the extent of the whole intermediate interest on the value of the property.   In his answer to the suit for that object, (which was a revivor of the old suits with supplemental matter,) M. set up and proved such neglect.

*Held*, *First*. That the agreement, in substance though not in form, was a *stipulation* in those suits, disposing of the rights of the parties who executed it.

*Second*. That M. could insist upon his rights under the agreement, in adjusting the distribution of the fund in the revived and supplemental suit.

*Third.* That N. was bound to foreclose the securities and effect the sale with reasonable diligence.

*Fourth.* That having omitted such diligence, he was not entitled to charge interest on the sums stipulated for him out of the proceeds, beyond the period when by reasonable diligence, such proceeds might have been realized. And the subsequent taxes were also disallowed.

*Fifth.* That a request by M., made after that period, not to sell during his temporary absence from the country, was not an acquiescence in the previous delay.

*Sixth.* That M. could not be allowed upon his answer, for interest on his half of the surplus proceeds after the date when the sale ought to have been completed.

June 15, 17; August 26, 1844.

In 1826, the complainants, then known as The Phœnix Fire Insurance Company, filed their bill in this court, to foreclose a large mortgage executed to them by Charles Mowatt on an undivided third of the real estate of his father John Mowatt, Junior, which he claimed by devise. This suit abated by the death of one of the defendants, and in February, 1832, the company filed a bill of revivor and supplement. Amongst the new parties then introduced, was James Mowatt. In the meantime a formidable suit had sprung up in which certain creditors of John Mowatt, Junior, were complainants, and his three sons and devisees, the Phœnix Insurance Company, F. Graham and wife, Ferris Pell, and others, were defendants; in which suit James Mowatt claimed that the whole remaining estate of his father, (after paying the debts of the estate,) including the lands mortgaged by C. Mowatt, belonged to him as devisee. The Phœnix Company claimed in that suit that their mortgage against Charles Mowatt was a valid lien. Graham and wife claimed in like manner a mortgage of $12,600, and F. Pell a mortgage of $5400, each of which were given to John E. Mowatt (the other son of J. Mowatt, Junior,) on his sale as executor of certain lands of the estate. James Mowatt's claims were adverse to all of these.

James Mowatt put in an answer to the bill of revivor of the Phœnix Company, asserting his prior right to the lands mortgaged, on the same grounds which he set up in the creditor's suit.

In November, 1832, and July, 1833, the latter suit was referred to a master to inquire into the administration of J. Mow-

att Junior's estate, and to report upon the claims set up to the fund by and under the respective devisees  During this reference, the bill of revivor appears to have slept.

In May, 1836, the master reported in the creditor's suit.  He found that there was due to James Mowatt from his brothers as executors and in respect of the estate of his father, at the date of C. Mowatt's mortgage to the Phœnix Insurance Company, more than $66,000, which was nearly or quite equal to the whole estate of J. Mowatt, Junior, which then remained.  He nevertheless reported that their mortgage had a priority as to $6000 of the fund then in question.  Exceptions were taken to this report by the Phœnix Company, by James Mowatt and by other parties.  In June, 1838, these exceptions were pending, and the suit upon the bill of revivor of the Phœnix Company had again abated.  The claim of F. Pell was then held by G. Suckley.

At this period, the complainants, (then known by their present corporate name,) and James Mowatt, in order to bring these perplexing controversies to a close, entered into the agreement in question, which was under seal and bears date June 28th, 1838.

The substance of the agreement was as follows :  The exceptions to the master's report in the creditors suit, taken by all the parties, were to be withdrawn, the report confirmed, and the fund in court in that suit paid out according to the report.  The complainants were to buy in and take an assignment of the claims of Graham and wife and Suckley, at not more than $10,000 for the former, and $5000 for the latter, and were to pay to James Mowatt the sum of $13,579 42, which was the amount in court in the creditors suit.  The complainants were also to file a bill, or take such other proceedings in this court as they might deem best for the purpose, for the foreclosure of their C. Mowatt mortgage, and to procure satisfaction of that and the Graham and Suckley mortgages, from the whole property mortgaged.  Out of the intermediate rents, and the proceeds of the sale of the mortgaged property and of the claims obtained from Graham and Suckley, the complainants were declared entitled to retain the sums paid to Graham and Suckley, with seven per cent. interest, and the sum to be paid to J. Mowatt (less two thousand dollars,) with five per cent. interest.  The residue, de-

ducting taxes and insurance, was to be equally divided between J. Mowatt and the complainants. Out of his half, Mowatt was to pay $500 towards the legal expenses incurred before and after the agreement. The complainants were, as expressed in the instrument, "to pay their own solicitors and counsel so that the property shall not be charged with any expenses heretofore incurred or hereafter to be incurred, &c., by reason of said mortgages or claims, or of this agreement."

There was a provision for arbitration in case of disagreement, and sundry other clauses which need not be stated.

The complainants immediately purchased the Graham and Suckley claims, and paid to J. Mowatt, the $13,579 42, pursuant to the agreement. They however omitted to proceed upon the mortgages until December 4, 1841, when they filed a bill of revivor and supplement, reviving the former suits on their C. Mowatt mortgage, and claiming to foreclose the Graham and Suckley mortgages.

In his answer to this bill, J. Mowatt set forth the agreement, the negligence of the complainants in proceeding, and the loss of interest thereby ; and claimed that they should not receive out of the fund, the interest accrued on their claims, and the taxes &c. paid, after the time when by due diligence they might have brought the lands to a sale.

In February, 1844, a decree of foreclosure and sale was made in the original and revived suits, reserving all questions between the complainants and J. Mowatt. The lands were sold under this decree in March, 1844, and the gross proceeds were about $33,000. Their value was the same in 1840, that it was in 1844, and as seven-eighths of them were vacant city lots, the income derived from them in the mean time, was very inconsiderable, and did not exceed the taxes and charges more than $700.

The complainants claimed to deduct from the net proceeds, before dividing under the agreement, the interest at the stipulated rates to the date of the sale, on their advances for Graham and Suckley's mortgages, and the sum received out of court by J. Mowatt. On the other hand, J. Mowatt insisted that interest on those sums should cease at the end of a year or eighteen months

from the date of the agreement. On this question the cause came to a hearing.

*Dan Marvin* and *W. Curtis Noyes*, for the complainants.

*Dudley Selden*, for the defendant Mowatt.

THE ASSISTANT VICE-CHANCELLOR.—The complainants object preliminarily, to the consideration of Mowatt's claim in this suit, because his remedy is upon the agreement, by a suit at law, or by a cross bill, if he be deemed entitled to relief here.

I think that the objection, in either view of it, is unfounded.

By the agreement, the parties compromised their respective claims, and combined all the outstanding liens. These were to be carried forward to a sale, and the proceeds distributed in specified proportions. The old foreclosure suits, though abated, were not dismissed, and were actually revived and used to effect the final sale. The agreement was in substance, though not in form, a stipulation in those foreclosure suits and the creditors suit, uniting the rights of these parties and providing for the ultimate disposal of the fund. The question is now for the first time presented between them, and I am not sure but that this agreement, if it had been produced at the hearing, without being set forth in the answer, would have entitled Mowatt to a reference upon the distribution of the fund.

Be that as it may, I entertain no doubt but that the court is bound to consider it in this stage of the suit. We are now upon the disposition of the fund created by this stipulation, and the question is, whether the complainants shall be permitted to take out of it the interest on their claims, and the charges on the property beyond a certain period. They obtain the principal of those claims, and the interest conceded to them, by force of this stipulation. And by force of the same instrument, Mowatt insists that this disputed interest and those charges, shall not be paid out of the fund, to diminish the share which the stipulation reserved to him. It appears to me that as between these parties, Mowatt's right to raise the question and claim the fund here, stands on the same footing that sustains the complainants right

to that part of the fund which is undisputed. As to them, the former decree settles nothing and forecloses nothing, on this subject.

This is not an attempt to set up damages, or to make a set off, as was suggested by the learned counsel for the complainants. The simple point is, to what extent shall the complainants receive interest and charges under a stipulation for the division of the fund in litigation.

I now come to the ground upon which Mowatt insists that the complainants shall not receive the interest in question. It is, that they took upon themselves to carry on the foreclosure, they were bound to do it with diligence; and if they had proceeded with diligence, the fund would have been realized more than four years sooner than it was.

1. The agreement is explicit that the complainants shall foreclose the mortgages.

2. It is a consequence, that they were to do it with reasonable diligence.

The agreement does not enable the defendant to move in the matter. Not only that, but he thereby relinquished his claims and standing in the creditors suit, where he was an actor, and could have urged forward the proceedings. His rights and interests were all merged in the stipulation. He was powerless, and wholly dependent upon the diligence of the complainants. It may be conceded, for the sake of the argument, that there was no such relation as that of principal and agent created by the stipulation; and it is clear that the foreclosure was to be prosecuted for the joint benefit. Yet it does not follow that the complainants were at liberty to proceed or not, at their option; much less that there was an adequate remedy open for Mowatt by filing his own bill.

A recent case in England before the Vice-Chancellor, Sir James Wigram, is a commanding authority on this point. (*Sowerby* v. *Clayton*, March 26, 1844, 8 Lond. Jurist Rep. 597.)(*a*) There W. Sowerby, an administrator, with the will

---

(*a*) Now reported in 3 Hare, 430.

annexed, filed a bill for the administration and settlement of the estate in 1823. In July, 1824, an order was made for the sale of certain reduced annuities, old and new four per cent. stocks, and bank and East India stocks, and for the investment of the proceeds in bank £3 per cent. consols. The complainant did not sell out those funds, nor prosecute the order during his life, and he died in August, 1838. The legatees under the will of his testator (who were parties defendant in his administration suit,) claimed to charge his representatives with the loss which they had sustained by his omission to sell out and invest in bank consols pursuant to the order. The Vice-Chancellor sustained the claim, and decided that W. Sowerby was bound to have prosecuted the order of July, 1824, obtained by himself; and it was no excuse for his having omitted to do so, that the defendants in the administration suit might themselves have applied to have the order carried into effect.

Next, are the complainants chargeable with the want of reasonable diligence? The stipulation was made June 28th, 1838. Their bill was filed December 4th, 1841. They seek to account for this long delay on two grounds; viz. the inherent difficulty and perplexity of the case, and the acquiescence of Mowatt.

In regard to the first, I shall be sufficiently liberal, if I take the estimate of their own counsel, Mr. Marvin. He testifies that in his opinion, if the proceedings had been commenced immediately after the execution of the stipulation, it would have taken at least *a year and a half* to have made the necessary inquiries and searches, prepared and filed the bill, served process, advertised the absent defendants, procured the appearance, &c. of the infant defendants, obtained a decree and procured a sale of the mortgaged premises.

With this allowance, the sale ought to have taken place the first of January, 1840. Proceeding from the date of Suckley's assignment, it would be the 24th of January; but as the payment of the $13,579 42 was made on the 28th June, 1838, it *must be inferred that his assignment had then been negotiated.*

Then as to Mowatt's acquiescence. The whole proof of this consists in his request when leaving for Europe, after the time when the decree should have been had, that a sale might not

take place during his absence. The same testimony shows that up to the time of his departure, he had been urging that the proceedings should be brought to a completion, to a decree, so as to be ready to sell at any time when deemed advantageous. I am sure that such a request not to sell, made at that period of the affair, is no acquiescence in the precedent delay to institute the proceedings.

It was agreed by the counsel, that about seven-eighths in value of the premises sold, were vacant lots ; and they also concurred in their deductions from the testimony, that the premises were worth as much in January, 1840, as the actual sales in 1844, and would have produced the same aggregate.

The result is, that if the complainants had proceeded with that diligence for which they had contracted, and which their duty to the defendant enjoined upon them; the fund arising from the sale would have been realized in January, 1840. Allowing a reasonable time to complete the sale, I will assume the first of February, 1840, as the period when it ought to have been in the hands of the master.

It would be manifestly wrong and inequitable, to allow them interest during the time that has since elapsed ; and in the distribution, the interest on their claims must cease on the 1st day of February, 1840.

From the gross proceeds of the sale, the master's bill and the costs of the infant defendants are to be deducted ; but the $216 14, paid by the master for the taxes of 1842 and 1843, are not to be allowed out of the proceeds. From the net proceeds thus obtained, the complainants are entitled to retain the respective sums mentioned in the stipulation, with the interest to February 1, 1840, at the rate agreed upon.

The residue is to be divided equally between them and James Mowatt, they retaining from his half the $500, for expenses.

To this residue, before its division, there is to be added the $200 received by the complainants from the release of the William-street lot, and the rents received from the same lot which accrued prior to February, 1840. Also such other net income as accrued prior to that day, as exhibited by the receiver's account and other papers in the cause.

This is all susceptible of a ready computation, and I perceive no necessity for a reference.

I cannot allow Mowatt's claim for interest since February, 1840, on the balance due to him. That is a distinct substantive claim for positive relief, which is not covered by the stipulation, and is thus beyond the scope of the suit as now constituted.

There must be a decree according to the foregoing directions.